All right, our fourth and last case today is 19-7006 United States v. Mendenhall. Mr. Derryberry, you're still with us. Okay, just for the record again, I'm Barry Derryberry from the Federal Public Defender's Office representing the appellant in this case, Stoney Mendenhall, who brings a plain error issue regarding a restitution order that he paid over $33,000. Mr. Mendenhall was convicted of 922 G. It's not the felon in possession, it is possession of a stolen firearm that has traveled through interstate commerce, and so my gripe about the restitution falls under the rule that we have in Huey, the Supreme Court case, and this court obviously would have looked at the Fourth Circuit case that has been the primary case that I've hung my hat on, recognizing it's not precedent here. It is so parallel, and it has visited this exact issue, this exact crime, and looking at how you apply the Huey standard. In the Davis case from the defendant was involved, according to the record evidence, in burglarizing a residence, breaking a window, stealing jewelry and a gun, and then he went into the woods and was very shortly thereafter caught. The gun was not recovered. Jewelry was, and so when he pled guilty, there was restitution ordered for him to compensate the burglary victims for the value of the gun and the window, and the Fourth Circuit said that under the Huey standard, that is not adequate for what's required for restitution, because restitution focuses on the conduct that underlies the charge, and with reference to the elements of that case, as well as the elements in my case, the elements involve knowing possession, receipt, and concealment of, in my case, there are three firearms that were enumerated in charge that have been shipped and transported in interstate commerce. Those elements do not encompass burglary or breaking into where these found my client liable for payment to the pawn shop of damages to the building. They were closed a couple of days, the lost sales to the pawn shop for that time that they were closed. Expenses involved in inventorying the stock to determine just what had been stolen are clearly not related to the conduct of what my client was convicted of in reference to the elements, and that's what Huey tells us we must be held to, that is the standard in Huey. I think another case that's of interest is cited in the brief, my brief, is... How would you take care of Burns then, the Tenth Circuit case Burns? That was the mail, the mail, stolen mail case. I don't think I have an answer for that one. Unfortunately, I don't have it, I don't have an answer. I'm not, I have not read Burns in preparation for this argument, unfortunately. The Tenth Circuit case I'm looking at is West, which involved another 922 G offense. West was decided in 2011, and this is a felon in possession of a firearm, and during that was resisting arrest, and was required to pay restitution stemming from that. And West, under the principle in Huey, because the damage that he did in the course of resisting arrest was not conduct underlying the acts of possessing a gun that had moved through interstate commerce, then that was If the air is, if there's air and it's playing, but didn't Mr. Mendenhall admit to the theft of the 60 firearms and the breaking, the burglary, and why is there any, why is he harmed by basically disgorging what he wrongfully took? Well, he's harmed because the statute does not authorize the court to order payment of restitution as to these things that the evidence does clearly support, are damages. So it's not an evidentiary problem. It's a, it's a, it's a form of legal error by the court, but you know, there's kind of a broader evaluation under the third and fourth prongs of plain error, and it's not like we're in doubt of, you know, his complicity in the theft. You know, it seems that, you know, why, why, why shouldn't, you know, the restitution error balance against the, the owner of the business that lost, you know, these profits and So United States v. James, a court, a case from this court in 2009, says the court may not order restitution in an amount that exceeds the actual loss caused by defendant's conduct, which would amount to an illegal sentence that is plain error. And so this is an illegal sentence, and I've seen case law say that it is analogous to a sentence in excess of a incarceration sentence in excess of the maximum punishment. This is an access of the maximum amount that Congress has authorized to be paid. So it is a flatly illegal order by the district court to of the proceedings affirming a very flatly illegal order that has no jurisdiction or authority to be entered makes out plain error. Your best case on that is Gordon again. Gordon. This is cited in my case, but Smith is also in my brief. U.S. v. Smith is also cited in my brief, a 1998 case for the principle that unlawful restitution constitutes plain error. If there are no further questions, I think that that covers my basis. Okay. Thank you, counsel. You've saved seven minutes for rebuttal. I've never done that before. Let's hear from the government. Mr. Burns. Please the court, counsel. I'm Gregory Dean Burrus. I'm an assistant United States attorney from the Eastern District of Oklahoma. In this particular matter, the defendant alleges that there was error by providing restitution in reference to an offense of Title 18 United States Code Section 922J, possession of a stolen firearm. It's the government's argument that not only was there not error, but certainly that there wasn't plain error. Well, let's talk about that in a minute. I did this to your opposing counsel in the last case just for purposes of argument and that plain error does apply because there was no objections made, I believe, below. You agree we're under plain error review? I do. Okay. How do you read 3663A.A.2, where it says restitution to a victim can be awarded only for, quote, loss caused by the specific conduct that is the basis of the offense of conviction? Now, here the government gave the guy a pretty good deal, but it's your language and you're charging. Here, the trial court then awards restitution for the full amount of everything I can see, all the guns, all the damages and everything, and yet this guy only pleads guilty to robbery and the taking of three guns. Now, I'm having trouble when it says that uncharged conduct cannot be the basis for restitution. I mean, that's just it. So we've got, as I look at it, just for purposes of argument, you've got an error, and under that reading it could be plain error, and it certainly could be prejudiced over the amount of the money that's caused. Now, explain to me for purposes of argument, your argument, as to why under that language this was not error and why it wasn't plain error. Now, I'm sure that's where you were going to take us to begin with, but long story short, that's what I want to hear. And thank you, Judge. I thought we might end up there eventually. So in terms of possession of the stolen firearm, we have to drill down into the facts of this particular case and the way that this defendant came about possessing the firearms that he stole. And if you look at that, it has to be a direct and proximate cause. The restitution has to be a direct and proximate cause of his actions that were illegal in nature and a basis of this offense. He could not have possessed these firearms that he stole in this particular instance without having conducted the acts that he did factually, which resulted in the harm. Granted, but that's not what he was convicted of. And that's correct, but it's a part of the factual grouping, and it goes to the possession element of that particular offense. So while he wasn't charged with a burglary, he was charged with possession of stolen firearms, and in order to possess these particular firearms, he caused directly that damage to the lawful owner of those firearms and did by way of not only stealing the firearms and their actual value but also the damage that he caused to the business and the other effects thereof. Well, how do you get around Huey then and the language that Judge Baldock just read from the restitution statute? It doesn't say related conduct, you know, all the good stuff that the government gets in sentencing very frequently. And I'm not sure that we do entirely get around Huey, but I would point out, as we noted in our brief, that the law has changed since Huey in terms of at least the congressional intent was made very clear in 1996 with the alteration of restitution and that it is to make victims whole and we're to lean in that direction. And I'm not sure we necessarily get around that, but I also, as was in one of the earlier arguments, wanted to jump to the fourth prong particularly. And if you look at this particular case, and in the fourth prong plain error requires those four legs and the fourth leg that it seriously affects the substantial fairness and integrity or public reputation of judicial proceedings. I don't think that it does at all in this case. And in fact, if we were to reverse this and send it back and require that this restitution be taken away regarding these particular firearms, and I think if we're going to do any one of the firearms, I think you get them all under burns. But if we were to take that away, what we're doing is, it's not only taking them away from a person that was unjustly violated and lost their revenue and lost their property at the hands of this defendant, but you're also unjustly enriching this defendant with those firearms. You're giving him a benefit by doing so. And so I don't think that that fourth prong can be met in this particular case. I didn't review Smith and Gordon today, but don't they get over the fourth prong in wrongful restitution matters? And I have to say, I think I descended in Gordon, so don't blame me, but it looks like we reached the fourth prong and found it satisfied. Well, and I like your dissent. Because I think that that's hard for me to grasp, that we could get to a fairness standard and integrity standard and a public proceeding being impacted to that level that we should reverse. And particularly, you know, this was a road that we traveled with defense counsel by our side, getting through this whole process, and they had many times at the junctures in the road to say, hey, we object, we want to go a different direction, and they didn't until well after we reached destination. And I just think that the standard is there for a reason and there are lots of things that could have been done differently at the trial level had they raised those objections, and we likely would have changed course in this particular matter. I heard you refer to the Burns case a minute ago. I think I heard you refer to the Burns case a minute ago, and again, not quite like what Judge Stimkovich was, but I was on the panel again in Burns. How do you believe that Burns helps you in your case here? Because Burns is a different case as I look at it. It is, except that where I'm looking to Burns primarily is, Burns looked at whether it was five pieces or 47 pieces of stolen mail, as I'm sure you recall. And in this case, while he was charged with three specific firearms, there were actually 62 firearms, and I'm just likening that to that situation in which once it's appropriate for restitution, then it's appropriate for all 62. But Burns did not have an objection to the restitution by the defendant, right? That's correct. And neither did Mendenhall, at least not at the trial level. It came up post-judgment. How would you have us write, in light of the language that we've looked at, if you were having to write an opinion in regards to that, affirming this in view of that language, how would you write that? Wow. Thank you. Very much. Never thought to put myself in the shoes of the court itself. But in terms of actually writing this, I would look at a number of factors. But frankly, the one that I immediately went to when I really went through this was backwards, and I went to the fourth prong. You just can't unjustly enrich a defendant and take away restitution from a victim and have a fairness in the proceedings. And like I said, there would have been different courses of action had the defense started objecting. This would have gone a very different way than it did, and they didn't. And so that kind of took away some of the options that we had that could have changed the course of this particular matter. If there are no additional questions, I would yield the rest of my time, and thank you for your time. Thank you, counsel. We appreciate that. Mr. Derryberry? Mr. Derryberry? Okay, Burns is easily dispatched because the argument by Mr. Burns is that the district court committed not plain error but clear error. I don't see plain error analysis. The argument is that there is clear error in finding that he took all of the items on which the restitution was based. And then this court addressed that issue and found sufficient evidence was presented. That's the issue. And sufficiency of evidence is not the issue here. In Burns, Huey or any post-Huey case was not cited the issue in Huey. Our issue was not discussed in Burns. Regarding any change in the statute that was addressed in Huey, which is the Witness and Victim Restitution Act that was amended by the Mandatory Victim Restitution Act, there is not a change as to the Huey doctrine. And that is what this court in West found when it said the MVRA, which amended the VWPA in 1996, did not change the general rule that restitution may only be ordered for losses caused by the offense of conviction. And they're citing a previous case. But this is West 646 F. 3rd at page 751, and it's cited in my brief. No other questions? Then that's it. Well, I actually have a question then. Could you address the government's argument that the fourth prong of plain error just cannot be met here because you just can't take the funds away from a victim in this circumstance? Can I get you to address that? The district court has no authority to order restitution outside of the authority granted by the statutes. And this is outside the authority granted by the statutes. So do we just not apply the fourth prong of plain error? I mean, I understand your argument. This is an illegal restitution order. That's your argument, correct? It's that the sentence itself is illegal is how. I mean, as we all know, the fourth prong can have a different flavor in what it takes to satisfy it based on the nature of the issue involved. And what I see in this court's restitution cases is that it's just instantly satisfied because when a court is acting without authority to say, here, take this money from you to you, and there's no legal authority, there's no discretion to do it, it's completely outside the bounds of the law, and there's just no authorization, no legitimacy, no way that anybody could argue in terms of the fairness. It's not fair to a defendant to say, you've got to pay $33,000, even though the statute would not allow it to be done. If you'd raised an objection, you wouldn't have the $33,000. And so because there was no objection, you have to pay the $33,000. That's not fairness. But there's a lot of things in this world that's not necessarily fair. But what I've just heard you explain is that you've done away with a plain error review because you're saying, well, if the court clearly went beyond the statute or what they could do, then it doesn't matter that we're reviewing it under plain error and particularly the fourth prong. You just ignore plain error review, and we can't do that. I mean, you've agreed in opposing counsel that we're here on plain error. Now, I'm just saying, granted that the court, that's why you committed error, and the error was plain. I mean, you went beyond your authority, but you still have to apply the third and fourth prong of plain error, don't you, counsel? Yeah, I'm not trying to imply that they are not necessary to be addressed. What I'm saying is they are instantly satisfied. But how? I mean, that's the question. They're relying totally on the fourth prong. How do you beat the fourth prong analysis in the plain error in this case? Because in sentencing cases, and this is basically a sentencing case, there are times where because it's a sentence and there's a direct impact as a result of the error that is not authorized otherwise, that case law recognizes that it's right there. There's no elaboration necessary. This seriously affects the reputation, et cetera, of the proceedings. And if I can analogize, you know, we've seen development out of the U.S. Supreme Court about two years ago that said that if a district court miscalculates a sentencing guideline range and that the sentence that the defendant has is within that range, I think the Fifth Circuit had been reversed in that case because they said something more is required than that to establish the fourth prong. And the U.S. Supreme Court said that because there is an error as to the guideline range, then you get the fourth. Matter of fact, you get the third and the fourth prong out of that. And actually this court had already had a precedent that said that that instantly satisfies the third prong when you have that type of error. And the Supreme Court has backed that up and gone further and said it satisfies the fourth. This is analogous. So your argument is that sentencing and restitution are the same thing, whereas in that case that was a sentencing case, not a restitution case. This is a restitution case, right? Right. There is a difference there. There's a certain tremendous differences between having to do penitentiary time and pay money, but they are still sanctions imposed by the court. My best example is a sentence that exceeds the statutory maximum. And I would think this court would recognize that that's plainly erroneous. In fact, I won a case on that about 16 years ago out of this court. Would that be an apprehensive violation? It's a violation of due process for a sentence to exceed the statutory maximum was the principle that I prevailed on. Okay. Although, you know, the other point in addition to the unjust enrichment there was, well, the government's objection had been made, they might have changed their course of their charging decision, I guess, would be their position or they would have gotten some consent from the defendant. But, you know, what about the unfairness to the process because without an objection, neither the court nor the government was allowed to change course here given the position that your client took? Yeah, this argument by the government is a ticket to the realm of speculation because we don't know just what would have happened different and what the defendant would have said in reaction. If it would have spurred a jury trial to have resulted or if things would have been settled the same way that they worked out this way. You're dealing with negotiations that are completely unpredictable. So this court couldn't base anything on that. All right, counsel. Thank you very much. I appreciate your arguments. I think we understand your positions. Counsel are excused and the case shall be submitted. We're in recess until tomorrow morning at 9.